UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>DUSTYN JAMES TAYLOR,<br><br>　　　　　　　　Defendant. | 4:16-CR-40068-KES<br><br>ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION OF DISCLOSURE OF CONFIDENTIAL INFORMANT IDENTITY<br><br>DOCKET NO. 60 |

**INTRODUCTION**

Defendant Dustyn James Taylor is before the court on an indictment charging him with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1).  See Docket No. 1.  Mr. Taylor now moves the court for an order compelling the United States ("government") to immediately disclose the name of the confidential informant who tipped off a Sioux Falls police officer, who then relayed the information to Taylor's state parole officer, that Mr. Taylor may have contraband at his house.  See Docket No. 60.

**FACTS**

An evidentiary hearing was held on a suppression motion filed by Mr. Taylor during which many facts relevant to the current motion were fleshed out.  This court issued a report and recommendation (R & R) on that motion to suppress.  See Docket No. 58.  The following statement of facts is taken from this court's R & R.

On June 8, 2015, Mr. Taylor was released to parole from a South Dakota state conviction.  During his initial parole meeting with his parole officer, Heather Buiter, Ms. Buiter explained the terms and conditions of Mr. Taylor's parole.  See Exhibit A.  Mr. Taylor's mother was present during this initial meeting.  During this meeting, Ms. Buiter explained the conditions of Mr. Taylor's parole.  Mr. Taylor executed a Standard South Dakota Parole Supervision Agreement (hereinafter "agreement").  See Exhibit A.  The agreement contained several conditions with which Mr. Taylor agreed to comply in order to remain on parole.  Among those conditions included: that Mr. Taylor would obey all local, state and federal laws (id., SA 1); that Mr. Taylor would not possess, purchase, or use marijuana, narcotics, controlled substances or drug paraphernalia (id., SA 2); that Mr. Taylor would not own, purchase, or possess dangerous weapons (id., SA 4); that Mr. Taylor would avoid companions with criminal influences (id., SA 7); that Mr. Taylor would comply with all instructions of his parole agent in matters affecting his supervision and cooperate fully and truthfully in answering his parole agent's inquiries (id., SA 10); that Mr. Taylor would not purchase or consume alcohol and would not enter establishments whose primary business was the sale of intoxicating beverages (id., SA 13A & B); and that Mr. Taylor would refrain from assaultive, abusive, or violent behavior and threats of violence (id., SA 14).  Finally, the agreement allowed Mr. Taylor's parole agent to visit his home at any time (id., SA 9) and provided that Mr. Taylor would submit his person, property, and place of residence to search and seizure at any time, with or without a search

warrant, whenever a parole agent or law enforcement officer determined there was "reasonable suspicion." (id., SA 5).

During this initial meeting with Ms. Buiter, Mr. Taylor expressed that while in the past he had been an "aggressive" person, he had outgrown such behavior. Mr. Taylor was paroled to live with his parents (his mother and stepfather) at a home on Menlo Avenue in Sioux Falls, South Dakota. Based on his level of need, Ms. Buiter met with Mr. Taylor once per month during his supervision.

On June 28, 2015, a Brandon, South Dakota, police officer notified Ms. Buiter that Mr. Taylor had been in a bar fight. As a result of the bar fight, Mr. Taylor received a broken nose. Though no criminal charges were filed against him, Mr. Taylor's mere presence in a bar was a violation of the terms of his supervision agreement. See Exhibit A, SA 13B. As punishment for this incident, Ms. Buiter placed Mr. Taylor in the Community Transition Program (CTP). The CTP is a structured program in which parolees are free to attend work during the day but must check into a residential correctional facility at night. See https://doc.sd.gov/documents/about/policies/Parole%20Services-Community%20Transition%20Program.pdf (last checked December 29, 2016). Mr. Taylor was in the CTP program for approximately one month.

On July 31, 2015, Ms. Buiter informed Mr. Taylor he would be allowed to move back into the home on Menlo Avenue on the condition that his parents did not reside there. Ms. Buiter did not want Mr. Taylor to reside with his parents because his parents had been present in the bar in Brandon with

Mr. Taylor when he had gotten into the fight.  See Exhibit A, SA 10, 13B. Mr. Taylor agreed to this condition, and informed Ms. Buiter his parents would move out of the Menlo Avenue home which he planned to rent.  Mr. Taylor represented to Ms. Buiter his parents would move out before his release from CTP and only his girlfriend, Talissa Toft, would be living there with him. Ms. Buiter approved this living arrangement and allowed Mr. Taylor to move back to the Menlo Avenue address.  This condition was verbally agreed to by Mr. Taylor and is noted in Ms. Buiter's case notes regarding Mr. Taylor's supervision.

On January 30, 2016, Ms. Buiter received an email from Sioux Falls Police Department (SFPD) Detective Skidmore.  The email relayed that Detective Skidmore had received information from a confidential informant regarding Mr. Taylor.  The confidential informant told Detective Skidmore the following information about Mr. Taylor:  (1) Mr. Taylor had multiple guns in the Menlo Avenue home; (2) the type of vehicle Mr. Taylor drove and that Mr. Taylor "possibly" had a gun in his vehicle; (3) Mr. Taylor was selling drugs out of his Menlo Avenue home; and (4) the person who had reported this information to Detective Skidmore did not want to make a police report because he/she had been in a dispute with Mr. Taylor and was afraid of retaliation.

After receipt of this email from Detective Skidmore, Ms. Buiter contacted the Sioux Falls Police Department narcotics unit.  The narcotics unit informed Ms. Buiter it had received a Crime Stoppers tip regarding the Menlo Avenue

home and that it had an open investigation regarding Mr. Taylor.  Ms. Buiter did not receive any further information about the content of the Crime Stoppers tip and did not rely on the Crime Stoppers information in deciding to search Mr. Taylor's residence.  Ms. Buiter testified the Crime Stoppers tip did not contribute to her reasonable suspicion to search because she did not know its contents.[1]  After she received the email from Detective Skidmore, Ms. Buiter decided to conduct a parole search of Mr. Taylor's home.

    Ms. Buiter made the decision to search based upon a culmination of circumstances.  Mr. Taylor previously articulated a propensity for violence, but claimed he had outgrown it.  Based on the occurrence of the bar fight, she believed he had been insincere about his statement that he had outgrown his propensity for violence.[2]  Detective Skidmore's comment regarding the informant's fear of retaliation added to her conviction that Mr. Taylor had lied to her about leaving his propensity for aggression behind.  In her view, that Mr. Taylor had lied to her about this issue was a violation of the parole agreement (SA 10, 14).  Finally, the information she received from Detective Skidmore's email led her to believe Mr. Taylor had violated the terms of his parole agreement regarding possessing weapons and drugs (SA 2 and SA 4).

---

[1] The discovery provided to Mr. Taylor in his state criminal case also included an earlier Crime Stoppers tip regarding the Menlo Ave. home which was made in February, 2015.  See Docket 41-3.

[2] Ms. Buiter explained this on direct examination when she indicated she did not violate Mr. Taylor's parole immediately after the bar fight because pursuant to "SB 70" felons in South Dakota are now being given more chances before they are simply locked away in the penitentiary.  SB 70 was passed in 2013 and was commonly referred to as the Public Safety Improvement Act. http://psia.sd.gov/general.aspx (last checked December 29, 2016).

The information regarding Mr. Taylor possessing guns led Ms. Buiter to be increasingly concerned about Mr. Taylor's violent tendencies.  Ms. Buiter knew nothing about the informant referenced in Detective Skidmore's email, and she could not personally testify about his/her reliability.  Ms. Buiter stated she trusted Detective Skidmore's tip.

Though she received Detective Skidmore's email on January 30, 2016, Ms. Buiter did not conduct the parole search immediately because she needed some time to prepare to make sure the search could be conducted safely.  On February 5, 2016, Mr. Taylor arrived at Ms. Buiter's office for his regular (though re-scheduled) parole meeting.  Ms. Buiter detained Mr. Taylor for investigative and safety purposes.  Ms. Buiter contacted the Sioux Falls Police Department for assistance in conducting the parole search. Mr. Taylor was detained at the Jameson Annex of the South Dakota Penitentiary while Ms. Buiter, with the assistance of two SFPD officers, conducted the search of his home.

Upon arrival at the Menlo Avenue home, Ms. Buiter was met at the door by Mr. Taylor's step-father.  Mr. Taylor's mother was also present at the Menlo Avenue home.  Mr. Taylor's mother explained to Ms. Buiter that though Mr. Taylor rented the home, Mr. Taylor's parents also lived there, with Mr. Taylor and Ms. Toft occupying the basement.

Upon arrival at the Menlo Avenue home, and before she began the search, Ms. Buiter determined Mr. Taylor had further violated his parole agreement by failing to follow her instructions regarding his living

arrangements. Specifically, Mr. Taylor had lied to Ms. Buiter by indicating his parents had moved out of the Menlo Avenue home before he had been released from CTP and had moved back in. This deception was in direct violation of parole agreement SA 10.

Ms. Buiter decided to search the basement area where Mr. Taylor lived with Ms. Toft. She saw a UA[3] kit, which raised her suspicion further about Mr. Taylor's use or possession of drugs. In the area occupied by Mr. Taylor, the following items were found: (1) four firearms; (2) two baggies of methamphetamine; (3) marijuana; and (4) a marijuana pipe.

Mr. Taylor was originally charged with new felony drug and firearms offenses in South Dakota state court. He was transported to the Minnehaha County Jail. When Ms. Buiter decided to violate Mr. Taylor's parole he was transferred back to the Jameson Annex of the South Dakota State Penitentiary. Mr. Taylor was indicted on the federal charges herein on June 7, 2016. See Docket No. 1. The indictment charges Mr. Taylor with possession of three firearms on February 5, 2016. Shortly after the federal indictment issued, the state dismissed Mr. Taylor's state charges.

Mr. Taylor moved to compel the government to disclose the January 30, 2016, email sent from the Sioux Falls Police Detective to Ms. Buiter and the complete, un-redacted Crime Stopper report referenced by Ms. Buiter in a July 7, 2016, summary letter (Exhibit B) along with the earlier (2015) Crime Stoppers report disclosed in discovery to Mr. Taylor in his underlying state

---

[3] Urine analysis. http://www.urbandictionary.com/define.php?term=UA (last checked December 29, 2016).

7

court case, State v. Taylor, CRI16-000909.  See Docket No. 27 at pp. 2-3.  Mr. Taylor also moved for an order compelling the government to disclose the identity of the informer referenced in Detective Skidmore's email to Ms. Buiter.  See Docket No. 28.

In this federal action, the government resisted disclosing the email.  The government explained it had requested the email, but Ms. Buiter did not make the email available to the government.  See Docket No. 34 at p. 2.  This court ordered the government to request a copy of the email from the SFPD and to produce a redacted version of the email if it was possible to do so without revealing the identity of the confidential informant.  See Docket Nos. 35 & 36.  Despite the court's orders, the email was not produced--SFPD also refused to provide the government with a copy of the email.  See Docket 37.  The government explained it had never seen nor possessed the email received by Ms. Buiter from the SFPD Detective.  Ms. Buiter and the SFPD refused to release the email to the government because it would "most certainly" identify the confidential informant.  See Docket 37.  Ms. Buiter explained during the evidentiary hearing on Mr. Taylor's motion to suppress that though she did not retain a hard copy of the email in Mr. Taylor's file, she did retain the email on her computer in her email file.

During the course of the evidentiary hearing on Mr. Taylor's motion to suppress, this court ordered Ms. Buiter to produce Detective Skidmore's email to the government for an *in camera* review by this court.  Ms. Buiter and the government complied with this court's order.  After conducting an *in camera*

8

review of the email, this court redacted portions of the email to protect the identity of the informer (see Docket No. 55-1), and then ordered the government to provide the redacted version of the email to Mr. Taylor, after allowing for the opportunity for the government to appeal this ruling.

The government did not appeal the ruling, and it has now provided Mr. Taylor with the redacted version of the email. A non-redacted version of the email has been filed under seal for reviewing courts' reference. See Docket No. 56 at p.2.

Mr. Taylor's motion to suppress was directed to the fruits of the parole search. He asserted that without further information about the identity of, and reliability of, the informer referenced in Detective Skidmore's email, the parole search of his home was not supported by reasonable suspicion. Based on that argument, *inter alia*, he now renews his motion to compel the government to immediately disclose the identity of the informer. See Docket No. 60.

## DISCUSSION

In Rovario v. United States, 353 U.S. 53 (1957), the Supreme Court recognized the "informer's privilege," that is, the government's privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Id. at 59. The Supreme Court provided the following rationale for the privilege:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

9

Id.

The Court carved out a number of exceptions to the privilege in accordance with its underlying purpose. Id. at 60. First, the contents of a communication between an informant and law enforcement are not privileged when the contents "will not tend to reveal the identity of an informer." Id. Secondly, the privilege is no longer applicable once law enforcement discloses the identity of the informant. Id.

A third limitation "arises from the fundamental requirements of fairness" and stems from the defendant's need to prepare an adequate defense. Id. at 61, 62. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. The Eighth Circuit has provided the following guidance on determining when disclosure is appropriate:

> While there is no litmus test for determining when disclosure is required, we have held that perhaps the most important factor for a court in this circumstance to consider is whether the [confidential informant's] information is material to the defense. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Consequently, disclosure is typically not required when the informant merely convey[s] information to the government but neither witness[es] nor participat[es] in the offense.

United States v. Lapsley, 334 F.3d 762, 764 (8th Cir. 2003) (additional citations omitted).

> In determining whether disclosure is required, the threshold issue is whether the informant is a material witness. Disclosure of the

confidential informant is not mandated "unless it is vital to a fair trial." "Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." However, if the informant acts as a mere "tipster," i.e., a person who merely conveys information but does not "witness or participate in the offense," disclosure is not required. The defendant has the burden of showing materiality, which "requires more than speculation that the evidence an informant may provide will be material to overcome the government's privilege to withhold the identity of the informant." Carpenter v. Lock, 257 F.3d 775, 779 (8th Cir. 2001) (additional citations omitted); see also United States v. Crenshaw, 359 F.3d 977, 1005 (8th Cir. 2004) (quoting United States v. Moore, 129 F.3d 989, 992 (8th Cir. 1997)) ("However, '[i]t is well established that in "tipster" cases, where the informant is not a necessary witness to the facts, disclosure of the informant is not required.' "); United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001) ("A defendant bears the burden of demonstrating that disclosure is material to the outcome of his case; in other words, that disclosure is vital to ensure a fair trial.").

The defendant bears the burden of demonstrating a need for the disclosure of a confidential informant's identity. Lapsley, 334 F.3d at 763; United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998). "The court must weigh 'the defendant's right to information against the government's privilege to withhold the identity of its confidential informants.' " Lapsley, 334 F.3d at 763-64 (quoting United States v. Fairchild, 122 F. 3d 605, 609 (8th Cir. 1997)) (additional citation omitted). Rather than establishing a "fixed rule" on the issue of disclosure, the Supreme Court has adopted a balancing test, weighing "the public interest in protecting the flow of information against the individual's right to prepare his defense," and taking into account "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Rovario, 353 U.S. at 60-64.

In his initial motion to compel the government to reveal the identity of the informer, this court held, *inter alia*, that Mr. Taylor had failed to demonstrate materiality. See Docket No. 36. In his motion to reconsider, Mr. Taylor makes two arguments in favor of materiality. First, he argues that, without further information about the identity of the informer and the informer's reliability, Ms. Buiter lacked a reasonable suspicion in support of the parole search of Mr. Taylor's home. See Docket No. 60 at p.2. Mr. Taylor asserts the "outcome of the suppression hearing would have been different had the identity of the confidential informer been disclosed." Id. at p. 2.

This court respectfully disagrees with that analysis. As discussed at great length in this court's R & R, even without the informer's tip contained in Detective Skidmore's email, Ms. Buiter had reasonable suspicion to search Mr. Taylor's home once she knocked on the front door to that home and discovered that Mr. Taylor's parents were living at the home. See Docket No. 58. The cohabitation with his parents was a violation of Mr. Taylor's parole agreement in that (1) he agreed to Ms. Buiter's requirement that he not live with his parents after the bar fight incident, (2) he agreed to be honest with Ms. Buiter, and (3) he agreed to comply with all instructions of Ms. Buiter in matters affecting his supervision. See Exhibit A from Suppression Hearing, SA 7 & 10. Furthermore, the parole agreement gave Ms. Buiter the right to visit Mr. Taylor's home at any time (id. at SA9), so Ms. Buiter was acting lawfully by appearing at Mr. Taylor's front door and knocking on it—i.e. she did not violate the law or the parole agreement by being on his doorstep, from which perch

she learned of the parents' residency in the same home as Mr. Taylor.  See United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010) (reasonable suspicion for a parole search may include evidence the parole officer discovers upon arriving at the defendant's house for an unannounced visit pursuant to the terms of the parole agreement).

As also explained in this court's R & R, the tip from law enforcement to Ms. Buiter was enough to give her reasonable suspicion to search Mr. Taylor's home without the necessity of Ms. Buiter knowing anything about how the police obtained their tip or the reliability of the means by which the police obtained their tip.  See Griffin v. Wisconsin, 483 U.S. 868, 871, 878-80 (1987); United States v. Carter, 511 F.3d 1264, 1269 (2008) (both upholding reasonable suspicion for a parole/probation search based on an anonymous informer's tip to police).  Therefore, the court declines to adopt Mr. Taylor's suggestion that he demonstrates materiality justifying disclosure of the informer's identity because that identity is tied into the "reasonable suspicion" for the search of his home.

Mr. Taylor also argues that the context of the informer's tip as revealed in the redacted email from Detective Skidmore shows that the informer must have been an eyewitness to, or a participant in, the crimes alleged herein against Mr. Taylor.  See Docket No. 60 at pp. 1-2.  This, he argues, demonstrates materiality such that he is entitled to know the identity of the informer.  Having reviewed both the unredacted and redacted forms of the email from Detective Skidmore regarding the informer's tip, this court disagrees.  Certainly, the

informer had a high degree of knowledge about Mr. Taylor's activities and his home, but that does not lead to the inescapable conclusion that the informer participated in or was an eyewitness to Mr. Taylor's alleged crimes. The court finds Mr. Taylor has not demonstrated materiality of the informer's identity such that immediate disclosure is required.

## CONCLUSION

In ruling on Mr. Taylor's first motion to compel the identity of the informer, this court ruled that the government must reveal the identity of its informer within 14 days prior to trial in this matter if the government intends to call the informer as a witness at trial, but the court denied Mr. Taylor's motion for immediate disclosure of the informer's identity. See Docket No. 36. Nothing in Mr. Taylor's motion to reconsider that ruling has convinced the court that the ruling should change. Accordingly, it is hereby

ORDERED that Mr. Taylor's motion to reconsider [Docket No. 60] is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CRIM. P. 58(g)(2); 59(a). Failure to file timely objections will result in the waiver of

the right to appeal questions of fact. FED. R. CRIM. P. 59(a) Objections must be timely and specific in order to require review by the district court.

DATED January 11, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge