UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DUSTYN JAMES TAYLOR, <br><br> Respondent. | 4:16-CR-40068-KES <br><br><br> ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND DENYING MOTION TO SUPPRESS |

**INTRODUCTION**

Defendant, Dustyn James Taylor, is charged with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Docket 1. Taylor moves to suppress the evidence found during a search of his home on February 5, 2016. Docket 40. The motion was referred to United States Magistrate Judge Veronica L. Duffy for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).

Magistrate Judge Duffy held an evidentiary hearing on December 20, 2016. On December 29, 2016, Magistrate Judge Duffy issued a report and recommendation denying Taylor's motion in full. Docket 58. Taylor filed objections to the report and recommendation. Docket 68. For the following reasons, the report and recommendation is adopted as modified by this opinion.

1

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND

After a de novo review of the evidence, the court finds the pertinent facts to be as follows:

On June 8, 2015, Taylor was released to parole from a South Dakota state conviction. During his initial parole meeting, Taylor's parole officer, Heather Buiter, explained the terms and conditions of Taylor's parole to him. Docket 41-1. Taylor's mother was also present during the meeting. *Id.* Buiter explained to Taylor that "drugs, guns, violence and lying were all rule infractions of supervision." *Id.* Taylor expressed to Buiter that he had outgrown his aggressive past. Taylor then executed a Standard South Dakota Parole

2

Supervision Agreement (parole agreement). *Id.* The parole agreement contained the following conditions: that Taylor would not possess, purchase, or use marijuana, narcotics, controlled substances or drug paraphernalia; that Taylor would not own, purchase, or possess dangerous weapons; that Taylor would avoid companions with criminal influences; that Taylor would comply with all instructions of his parole agent in matters affecting his supervision and cooperate fully and truthfully in answering his parole agent's inquiries; that Taylor would not purchase or consume alcohol and would not enter establishments whose primary business was the sale of intoxicating beverages; and that Taylor would refrain from assaultive, abusive, or violent behavior and threats of violence. Exhibit A. Taylor also agreed to submit his person, property, place of residence, vehicle, and personal effects to search and seizure at any time, with or without a search warrant, when reasonable suspicion is determined by a parole agent or law enforcement officer. Taylor was paroled to live with his parents at a home on Menlo Avenue in Sioux Falls, South Dakota, and Buiter met with Taylor once a month during his supervision.

On June 28, 2015, Buiter received a phone call from a Brandon, South Dakota police officer informing Buiter that Taylor had been involved in a bar fight and received a broken nose. *Id.* Taylor's presence at the bar was a violation of the terms of his agreement. As punishment for violating his

agreement by being at a bar, Buiter placed Taylor in the Community Transition Program (CTP)[1] for one month. *Id.*

On July 31, 2015, Buiter informed Taylor that he could move back into his house on Menlo Avenue if his parents did not live with him. *Id.* Buiter did not want Taylor's mother and stepfather to live with him because they were present at the bar in Brandon on the night of the bar fight. *Id.* Taylor verbally agreed with Buiter that his parents would move out of the Menlo Avenue house and only Taylor and his girlfriend, Talissa Toft, would live in the home. Buiter noted this verbal agreement in her case notes.

On January 30, 2016, Buiter received an email from Sioux Falls Police Department (SFPD) Detective Skidmore. In the email, Detective Skidmore stated that he received information from a confidential informant regarding Taylor. The confidential informant told Detective Skidmore the following: Taylor had multiple guns in his home; Taylor drove an older style Cadillac with paper plates and that Taylor may have a gun in the car; Taylor was selling drugs out of his Menlo Avenue home; and he or she had been in a dispute with Taylor and did not want to file a police report because he or she was afraid Taylor would retaliate. *Id.*; Docket 55.

After receiving the email from Detective Skidmore, Buiter contacted the SFPD narcotics unit. Docket 41-1. The narcotics unit informed Buiter that

---

[1] CTP is a structured program where parolees are permitted to attend work during the day but must check in to a residential correctional facility at night. *See* https://doc.sd.gov/documents/adult/Community%20Transition%20Program.pdf.

4

there was a Crime Stoppers report on the home. *Id.* Buiter testified that she did not ask any follow-up questions about the Crime Stoppers report and that she did not rely on the Crime Stoppers report when forming her reasonable suspicion. *See* Docket 54 at 42. Buiter then decided to conduct a parole search of Taylor's home.

Buiter based her decision to search the Menlo Avenue home on a number of circumstances. First, Taylor indicated in his initial meeting that he had put his violent past behind him, but a few weeks later, he went to a bar and got in a bar fight. Second, Detective Skidmore's email led Buiter to believe that Taylor possessed guns and drugs. Third, the confidential informant had indicated that Taylor threatened him or her and he or she was afraid Taylor would retaliate. Based on these circumstances, Buiter suspected that Taylor had violated the terms of his parole agreement by possessing guns and drugs and engaging in violent behavior. Buiter did not know anything about the confidential informant referenced in Detective Skidmore's email, but she testified that she trusted the police department. Docket 54 at 43.

On February 5, 2016, Taylor arrived at Buiter's office for his regular parole meeting. At that time, Buiter detained Taylor at the Jameson Annex of the South Dakota Penitentiary while Buiter and two SFPD officers searched his home. When Buiter arrived at the Menlo Avenue home, Taylor's stepfather answered the door and identified himself. Docket 54 at 22. Buiter also identified Taylor's mother, whom she had previously met during Taylor's initial parole meeting. *Id.* After entering the home and looking around, Buiter asked

Taylor's stepfather and mother if they were living at the home, and they stated that they were. Docket 54 at 22, 56. Taylor's parents also stated that Taylor and his girlfriend lived in the basement. *Id.* at 24.

At that time, Buiter decided to search the basement. *Id.* Buiter testified that one of the first things she saw when she got downstairs was a Urine Analysis (UA) kit, which further confirmed Buiter's suspicions that Taylor possessed drugs. *Id.* at 25. Buiter and the other SFPD officers then found four firearms, two baggies of methamphetamine, marijuana, and a marijuana pipe. On June 7, 2016, Taylor was indicted on federal charges. Docket 1. The indictment charges that Taylor was in possession of three firearms. *Id.*

Taylor moved to compel the government to disclose Detective Skidmore's email, the unredacted Crime Stoppers report referenced by Buiter in her summary letter, and the earlier Crime Stoppers report. Docket 27. The government resisted disclosing Detective Skidmore's email and the Crime Stoppers report. Docket 34. The court ordered the government to request a complete copy of the Crime Stoppers report, but because Crime Stoppers is run separate from the SFPD, the government was not able to comply. Because Buiter testified that the Crime Stoppers report did not contribute to her decision to search the home, further pursuit of the Crime Stoppers report was unnecessary. Initially, Buiter would not produce an unredacted copy of Detective Skidmore's email to protect the identity of the informant, but later Buiter did disclose the email to the court for an *in camera* review.

## DISCUSSION

Taylor filed a timely objection to Magistrate Judge Duffy's Report and Recommendation. Docket 68. Taylor objects to a number of Magistrate Judge Duffy's factual conclusions. *Id.* at 3-6. The court reviewed the transcript of the evidentiary hearing and the evidence presented. Its findings on the factual objections are reflected in the above factual background.

Taylor also objects to Magistrate Judge Duffy's finding that Buiter had reasonable suspicion to conduct a parole search on February 5, 2016. *Id.* at 7. The court will now consider that objection.

Under the Fourth Amendment, the court examines the totality of the circumstances to determine if a search is reasonable. *United States v. Knights*, 534 U.S. 112, 118 (2001). Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 118-19. "Probation is one point . . . on a continuum of possible punishments." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). Thus, probationers have a diminished expectation of privacy, and "when an officer has a reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring," and a subsequent search is reasonable. *Knights*, 534 U.S. at 119-121. "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time,

7

the officer has a particularized and objective basis for suspecting wrongdoing."
*United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010).

## I.      Whether the anonymous tip was reliable.

The reliability of an informant generally depends on the informant's track record of supplying information, whether the tip is based on the informant's personal observation, and whether the tip is corroborated by other information. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)(citing *Illinois v. Gates*, 462 U.S. 213, 233-34 (1983); *Draper v. United States*, 358 U.S. 307, 313 (1959)). But in the case of a probationer search, these standards may be relaxed because a police officer may not want to disclose the identity of sources to probation officers. *Griffin*, 483 U.S. at 880. Thus, it is "enough if the information provided indicates, as it does here, only the likelihood ('had or might have guns') of facts justifying the search." *Id.*

Here, Buiter was not able to testify to the reliability of the confidential informant because she never talked to the informant herself and did not know whether the informant had a reliable track record. But the law does not require that of a probation officer.[2] Detective Skidmore believed that the informant was

---

[2] *See Griffin*, 483 U.S. at 880.

> To allow adequate play for such factors, we think it reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search. The same conclusion is suggested by the fact that the police may be unwilling to disclose their confidential sources to probation personnel. For the same reason, and also because it is the very assumption of the institution of probation that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law, we think it enough if the information

reliable, and Buiter testified that she trusted the police department. The information in the tip was consistent with Taylor's past behavior, accurately described Taylor's house, and accurately described Taylor's car, which further indicated the reliability of the tip. See Docket 55-1. Based on those facts, the court finds that the tip was reliable and could form the basis for reasonable suspicion.

## II.    Whether Buiter had reasonable suspicion to search the home.

In *Griffin*, the Court specifically stated that it is "reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search." *Griffin*, 483 U.S. at 880. Probation officers searched the probationer's home after a detective from the local police department received information that the probationer might have guns. *Id.* at 871. The United States Supreme Court found that the search of the probationer's home was reasonable because the probation officers had "reasonable grounds" to believe that the probationer had guns in his home based on the tip from the local detective. *Id.* at 879-880.

Here, Buiter received a tip from a local police officer that Taylor had guns and drugs in his home and that he had threatened the tipster. Taylor argues that this case is distinguishable from the facts in *Griffin* because the probation officer in *Griffin* searched the home a few hours after receiving the tip from the detective, but Buiter waited a week after receiving the tip to search Taylor's

provided indicates, as it did here, only the likelihood ('had or might have guns') of facts justifying the search.
*Id.*

9

home.  Docket 68 at 9. But the extended time did not change any of the facts and circumstances known to Buiter. On the day of the search, Buiter knew of the tip from the SFPD, she knew that Taylor had a violent past, and she knew that Taylor had previously violated the conditions of his parole. None of those facts changed between the day she learned of the tip and the day she executed the search. Thus, Buiter had reasonable suspicion at the time she decided to search Taylor's home.

In *Hamilton*, the Court found that officers had reasonable suspicion when the parolee took a suspiciously long time to answer the door. *Hamilton*, 591 F.3d at 1020. Parole officers searched the parolee's home after they made an unannounced visit to the home. *Hamilton*, 591 F.3d at 1020. The parole officers arrived at the home as part of a general spot check on sex offenders. *Id.* When the officers knocked, the parolee responded, "Let me get dressed." *Id.* The parolee then took five minutes to answer the door and was only wearing sweatpants. *Id.* The officers then entered the residence and observed several beer cans lying on the floor indicating a clear violation of the condition that he not consume alcohol. *Id.* The officers decided to search other parts of his home and found child pornography on his computer. *Id.* The court found that the officers had reasonable suspicion because the parolee took a long time to answer the door after claiming he was "getting dressed," but when he answered the door he was only wearing sweatpants. *Id.* at 1023. Thus, the officers formed a reasonable suspicion that the parolee took that time to try to hide evidence of a parole violation or a crime. *Id.* The officers' suspicions were confirmed when

10

they entered the home and observed clear evidence that the parolee had consumed alcohol—justifying further search of the home. *Id.*

Here, when Taylor's stepfather answered the door, Buiter had reasonable suspicion to believe that the stepfather was living at the home—a violation of SA10 in Taylor's parole agreement. Her suspicion was confirmed when she entered the home and Taylor's stepfather and mother told her that they lived there and that Taylor primarily lived in the basement. Similar to the officers in Hamilton when they observed empty beer cans on the floor, Buiter then had reasonable suspicion to believe that Taylor had violated his parole agreement, and she was warranted to search the area where Taylor lived for further violations.

Taylor argues that learning that the stepfather and mother were living at the home did not increase reasonable suspicion that Taylor was possessing or selling guns or drugs, and it did not justify expanding Buiter's search of the entire home. Docket 68 at 11.  That is incorrect. Taylor agreed to the condition that he not live with his stepfather and mother and told Buiter that they had moved out of the Menlo Avenue home. When Buiter discovered that Taylor's stepfather and mother were living at the Menlo Avenue home, she had direct evidence that Taylor violated SA10 of his parole agreement by lying to her about his living situation. The parole agreement states that Taylor will submit to a search of his place of residence "whenever reasonable suspicion is determined by a parole agent." Exhibit A. Also, Buiter did not expand her

11

search when she learned of the living arrangement. She properly narrowed the search to the basement where Taylor primarily lived.

In *United States v. Makeeff*, 820 F.3d 995, 1001 (8th Cir. 2016), the Court found that a tip indicating the probationer was violating his probation and the officer's knowledge of the probationer's past behavior formed reasonable suspicion. Two probation officers made an unannounced visit to the probationer's home after one of the officers received a tip that the probationer bragged about using a computer and possessing child pornography—both violations of his probation. *Id.* at 998. The officers also knew that the probationer had a prior conviction for child pornography, that he was prohibited from viewing or possessing any pornography, that he was prohibited from accessing a computer, and that he had previously violated his conditions by viewing pornography. *Id.* When the officers searched his home, they found a USB drive in his residence indicating he had accessed a computer, and the probationer denied ownership of the USB drive. *Id.* at 1001. Based on all the information known to the officers and considering the totality of the circumstances, the district court found that the officers had reasonable suspicion to seize the USB drive, and the Eighth Circuit agreed. *Id.*

Similarly, Buiter had reasonable suspicion based on the tip from Detective Skidmore and Buiter's knowledge of Taylor's past violent behavior. Buiter received a reliable tip from Detective Skidmore that Taylor possessed guns, drugs, and had engaged in violent behavior. Buiter also knew that Taylor had previously violated his parole by going to a bar and getting in a bar fight.

12

And upon knocking on the door at the Menlo Avenue home, Buiter learned that Taylor lied to her about his living situation. Based on the totality of the circumstances, Buiter had reasonable suspicion to believe that Taylor had violated conditions of his parole agreement and was potentially involved in criminal activity.

Finally, Taylor requests that this court remand this issue back to Magistrate Judge Duffy for further questioning regarding the January 30, 2016 email because Taylor did not receive the redacted email prior to the hearing. Docket 68. Based on a review of the transcript from the suppression hearing on December 20, 2016, this court finds that Taylor had sufficient opportunity to question Buiter about the email and how the email formed her reasonable suspicion. Buiter stated that the tipster's statement that Taylor had threatened the tipster, had guns in the home, and had a violent past formed the basis for her reasonable suspicion that Taylor was engaging in violent behavior in violation of his parole agreement. *See* Docket 54 at 21, 40-42. The contents of the email fit Buiter's description, so further questioning is not necessary to determine Buiter's basis for her reasonable suspicion.

## CONCLUSION

The court finds that Buiter had reasonable suspicion to conduct a search of Taylor's home on the belief that Taylor possessed guns and/or drugs, had lied about his living situation, and had engaged in violent behavior all in violation of his parole agreement. Thus, it is

13

ORDERED that the report and recommendation (Docket 58) denying

Taylor's motion to suppress is adopted as modified by this opinion.


DATED March 31, 2017.

BY THE COURT:


*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

14